Okay. Counsel, you may proceed. Good morning, Your Honors. John Nelson and Megan Rakowski on behalf of Appellant Mr. William Carranza Galvez, if I may reserve two minutes for Ms. Rakowski's rebuttal. Thank you. Your Honors, William Carranza Galvez was unlawfully seized, interrogated, and arrested. He was then held without probable cause for nearly a week while the government investigated further charges against him, and the very courts that should have remedied those wrongs instead erected hurdles. This Court should reverse or remand this case for three reasons. First, the I-213 was the fruit of a Fourth Amendment violation. Second, the I-213 was the product of an unlawful detention. And third, because the IJ influenced Mr. Carranza Galvez to abandon his lawful asylum remedy. First, the I-213 should have been suppressed as the fruit of an egregious Fourth Amendment violation. When did the seizure occur exactly? What is your theory there? Your Honor, Mr. Carranza Galvez was changing his tire by the side of the road. And in that sequence of events, when specifically do you submit there was a seizure? After the underlying rationale for the initial seizure was satisfied, the encounter should have ended, but it didn't. Mr. Carranza Galvez was immediately approached at the door of his vehicle as he attempted to exit. Specifically, when did it happen? It happened as he was apprehended at the door of his vehicle and isolated from his companions. He was then interrogated in a language he didn't understand. And when he asked for a translator, that request was denied. So in this big scenario, he stopped at the road. Yes. Changing a tire. Officer comes up and tells him to move. He moves. And you're saying it's at what point at that second location became the seizure? When the officer reinitiated contact after the initial underlying rationale for the seizure was satisfied. Wasn't the officer entitled to check on a disabled vehicle? Your Honor, in order to do so, he needed to establish consent or articulate a reasonable suspicion of wrongdoing. And the record indicates neither here. What we have is the officer immediately approaching him and putting questions to him. It was an inherently coercive atmosphere. So you're saying when he started asking questions, that's when the seizure occurred? Yes, Your Honor. Because there's no indication of consent here and there's no indication of a reasonable suspicion. In fact, there is all sorts of indication that things happened before that would have aroused suspicion. To begin with, in the first encounter, you've already acknowledged that your client didn't understand the language and wasn't responding in a way the officer otherwise would have expected. And we know that later, your client blew a 1.3? Pretty high. And so it's not unreasonable to infer that his responses to the officer were responses that could well have aroused suspicion. Now, that charge never got litigated, so the evidence wasn't much developed there. But why should we assume that, in fact, your client was not responding in an unusual or impaired or suspicious manner? Well, Your Honor, there were three other witnesses there that evening, two of whom the government opposed putting forward for testimony and the third of whom, the CHP officer, the government said they need not and will not offer into evidence anything further to support the I-213. So the limited record here is a creature of the government's creation. And they now want to rely on inference from those omissions to say that we can infer that Mr. Carranza-Galvez had displayed some behavior that alerted the officer. But the record doesn't support that. We have Mr. Carranza-Galvez. Even his, even your client's admission would be that there was some delay in moving the car because he didn't have his license and he was trying to get a friend to move it and a friend wouldn't move it. It seems to me that your problem here is that when the seizure actually took place and then whether there was probable cause for that. Well, Your Honor, I don't think there was probable cause for that seizure because There would be probable cause if it occurred after the officer conducted the breathalyzer, right? Absolutely after he conducted the breathalyzer, but I think that's putting the cart before the horse because before he should have engaged in that line of questioning, he should have established a reason for this encounter, this subsequent encounter with Mr. Carranza-Galvez. So, Counsel, I understand the fruit of this poisonous tree argument you're trying to make here. I just want to, this part of the case has puzzled me. So we have a fellow who was stopped at the side of the road, is eventually cited and convicted of a DUI. He pled guilt or no low plea, correct? Yes, Your Honor. So there is a guilty plea. Again, I understand it's a no low plea, but there is a conviction for this DUI. How is the fact that he pled guilty to the crime, isn't that what is triggering his removal from the United States? Yes, Your Honor, and that's improperly, that was improperly considered by the BIA and the IJ. The Supreme Court has said in Hardin v. Proceeds that a guilty plea does not preclude an individual from later seeking redress for a Fourth Amendment violation. I appreciate he could potentially bring a 1983 suit to sue. What I'm still trying to understand is that can he effectively suppress his conviction through a Fourth Amendment violation when he's already pled guilty to the violation? Yes, Your Honor. Hardin v. Proceeds is not solely in regard to 1983 claims. This court has also said in Real Property at Site 18, it's applied it to a civil asset forfeiture. Right, and I could see he could challenge if his car was seized as part of this. But when he has laid out a factual basis, and I understand it's a no low plea, but when he has admitted to a factual basis that says I did it, why can't the immigration officials then use that to say he did it? Your Honor, when a defendant pleads guilty, the court relies on his admission of guilt to establish that guilt, the finding for that guilt. Now, the underlying character of the arrest is never litigated, and there's no claim preclusive effect because the court doesn't need to rely on potentially tainted evidence. So because there's no claim preclusive effect, Fourth Amendment violations are not among those waived by individuals who plead guilty. So the idea is then the Fourth Amendment violation that you allege could effectively wipe out the guilty plea for immigration purposes. Well, no, the guilty plea would suppress the I-213, and because the government insisted on relying on the I-213 entirely, it would essentially place the government in the position where they need to establish evidence of his alienage. Now, in the minute I have remaining before reserving my co-counsel's rebuttal, I'd like to briefly touch on the unlawful detention issue. Here, Mr. Carranza-Govez was held for nearly a week, from May 19th to May 25th. In the government's answer, they say only that we cannot show the timeline, they don't say there was probable cause to hold him, and they don't say that holding him past the 48 hours was a violation. But the record is clear on the timeline here. Mr. Carranza-Govez was arrested on a Thursday evening. The ICE detainer authorizing CHP to hold him for an additional 48 hours past when he would have been released, which is issued that same evening. Under California law, he would have been released Saturday evening. We exclude Sunday per federal law. The absolute latest Mr. Carranza-Govez should have been released was Tuesday evening, but he wasn't. He was held until Wednesday when immigration agents finally showed up to interrogate him and charge him anew. When does the 48 hours start running? The 40 for DHS or for CHP? Oh, for the federal detainer. When does the clock start running on that? Per 287-7, the clock starts running immediately once the state custody expires. But what makes us say the state custody expired as early as you say? It seems to me that the state was going to hold him until Monday. I don't let people go before then, and so that's when the clock should start running, shouldn't it? Under California Penal Code Section 825, it says only that the state may hold somebody for 48 hours, and we exclude Sunday and holidays. So he should have been held until Saturday evening and then either released or the clock starts ticking for DHS. Thank you, Your Honors. And we'll give your co-counsel two minutes. Thank you. Good morning, Your Honors. May it please the Court, my name is Jessie Carlson. I represent the Attorney General in this matter. Your Honors, I want to point out the real issue that the Court should be focusing on here. This is an immigration, a civil immigration proceeding that we're dealing with, and there is a process by which motions to suppress are to be assessed by the immigration court. And in this situation, the petitioner is required to submit an affidavit presenting his evidence for why the immigration judge should suppress the I-213 in this case. The petitioner in this case presented an affidavit which outlined his depiction of the encounter with California Highway Patrol all the way up until the time of his arrest, and that's it. That was provided in conjunction with his motion. If he had presented with the evidence in the affidavit, if that had presented to the immigration judge evidence of a prima facie Fourth Amendment violation, she could have at that point decided to move forward and grant him an evidentiary hearing, at which time he would be able to testify and be subject to cross-examination by the government about the circumstances outlined in his affidavit. Now, that's a big if. If the evidence in the affidavit had risen to the level of a prima facie case. Beyond that, and his case stopped after the immigration judge concluded that he did not proffer appropriate prima facie evidence to support that violation. But assuming that he had, the next remedy would be an evidentiary hearing after he would testify during the evidentiary hearing. And then, again, there would be another stopping point. If he had continued to support his case, at that point the burden would shift to ICE or DHS to then set out its own evidence and demonstrate why there was no violation. So there is a very specific process set out in the matter of Barsenas that addresses how this is supposed to work. Let me get back to the question I asked opposing counsel. Here we have a NOLO plea to DUI. They're contending that, effectively, that if there was a bad stop here, despite the guilty plea, the bad stop could cancel out the I-213. Do you agree with them that that's the proper analysis? That even with a guilty plea, a factual basis saying I did it, that a bad stop can basically wipe that out? Your Honor, I have to give, I'm not trying to evade the question, but really what it comes down to is what the immigration judge concludes based on the evidence in the affidavit. So if, in this situation, there was a guilty plea, so that's further evidence that supports the fact that there is no prima facie case. All right, but then you're, by your answer then, what I'm hearing is that a guilty plea is not conclusive. That even if there is a guilty plea, that's evidence. It's not conclusive evidence, it's just evidence, and then we're still up for grabs whether or not there was a Fourth Amendment violation. I believe what the immigration judge would be able to consider, what the immigration judge is supposed to consider is what is in the affidavit. The evidence that would have to be presented is the evidence from the alien. So in this case, the burden is on the alien to demonstrate a violation. For example, if the alien said, on so-and-so day, on January 1st, 2011, January 3rd, 2011, I robbed a bank. I pled guilty to robbing the bank. As part of the bank robbery investigation, the police searched my house without a warrant, and they found evidence of my crime. So therefore, it was a bad search. My Fourth Amendment rights were violated. Are they correct that under that circumstance, and that's in the affidavit, that they at least have a plausible claim that we would have to adjudicate here today because they've alleged a Fourth Amendment violation? Now, whether it's egregious or not, that's the question we would have to answer. But the fact that he admitted in open court under oath that he robbed a bank, that does not end it as far as you're concerned. We still have to look to whether there's a Fourth Amendment violation. Your Honor, I'm not sure that I would want to make that concession because I'm not entirely sure that that would end it. But the evidence that's before the IJ is really what is important. So as I indicated, there is this very specific procedure that's supposed to take place. And in this case, all of these other claims that have been raised and not exhausted have come after what's supposed to be the court should be looking at here. Really what the court should be looking at is just the motion to suppress and whether that case had been made and whether the IJ was reasonable to deny that motion to suppress. In the instance that the court believes that that conduct was not reasonable on behalf of the IJ, the solution would be to send the case back for an evidentiary hearing. The government does not believe that is necessary in this case. It's very evident that there was no Fourth Amendment violation set forth in the affidavit. I was never clear on when the order denying the motion to suppress by the IJ actually happened. When in the sequence of events did that occur? Was it the first judge or was it the second judge who finally adjudicated the issue? So it was the first judge ultimately. The judges in this case, if you look at the record, you'll see there were some hearings where one judge would handle it and there were two judges in this case. And the hearings kind of went back and forth. But I believe the case that for the motion to suppress was made before a judge, I think it was Hayward, and she ultimately decided and issued her decision on the motion to suppress. There was a subsequent hearing where an application for assignment, I believe, was presented at which time she was also providing. The second judge commented on it and said that he adopted it or something to that effect? The second judge, I believe, simply indicated that the motion had already been ruled on and just carried that forward. Okay. Well, I misunderstood then. Thank you. As I said, Your Honor, the issues here really are a lot simpler than the other side is pointing out. The allegations only went up to the point of arrest and anything beyond that was not addressed and the evidence was not proffered. Certainly there is also no indication that any claims were made. You know, as you indicated, Your Honor, the petitioner pleaded guilty to these charges. So the evidence, there has been no viable claim. Plead guilty or plead, did he not contest the charges? Well, he didn't contest the charges, but certainly took responsibility for the charges. And the real issue here, again, this is a civil immigration proceeding, is whether or not he admitted to his alienage and whether or not ICE had appropriate evidence to file a charge against him for being unlawfully present in the country. And certainly the record reflects that there is evidence of that nature. I know you don't think we should get that far, but would you comment on the immigration judge's insistence that Mr. Corenzo Galvez decide, choose between the motion to suppress and the petition for asylum? Yes, Your Honor. That issue was not exhausted at all in this case. I understand that, but if we got to that. But that would be our primary claim, as you know. But to the extent that issue is to be addressed, based on the record, it's not apparent that I.J. was necessarily incorrect there. There is evidence to suggest, you know, I believe there is a regulation that talks about when this kind of information can be used. But this is an open issue. The Board did not address it in this case, and so we believe that to the extent that is an issue that the Court wants to take up, it should be remanded to the Board to address it in the first instance. Any further questions, Your Honors? Thank you very much. Thank you very much. Good morning, Your Honors. Megan Rutkowski on behalf of the petitioner. While Mr. Corenzo Galvez did plead guilty in the underlying plea, that is not what triggered the removal.     and the petitioner is a member of the Board of Trustees. What triggered the removal in this case were the statements made in the I-213 that admitted alienage. Now, in the removal proceeding, the government has the burden of approving identity and alienage. If these statements were given under the fruit-of-the-poisonous-tree doctrine because of the egregious violation that occurred, then they should be suppressed. Here, the government, on one hand, did not even address this issue in the brief. And on the other hand, the statements that were given should be suppressed because of the CHP officer's egregious conduct and because Mr. Corenzo Galvez was held by CHP and DHS beyond the 248-hour periods that are allowed under California regulation and California statute. These days are clearly in the record. The government has not proffered any timeline to dispute these dates. So what would happen in the end? I mean, at the end, do we wind up going back and having the government prove what apparently is the fact that he's an alien? Your Honor, if this case were to be remanded either to suppress the I-213 or an evidentiary hearing would be appropriate to establish the facts that are missing, the government wants this Court to rely on the omissions and to infer the reason why the officer acted the way he did. I'm asking a bigger picture question. I mean, in the end, is there any doubt about your client's alienage? And if that's the case, what in the end gets accomplished by sending it back to the Executive Office of Immigration Review for further evidence on that subject? Well, Your Honor, that also lends its point to the third issue with the IJ impermissibly coercing my client into abandoning his asylum application, which is why we ask for a reversal or remand with instructions to suppress or for an evidentiary hearing. I see my time is up. Thank you. Thank you very much, Counsel. This matter is submitted again. Thank you, Counsel, for your arguments.
judges: Clifton, Owens, Antoon